IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-201-BO

JOHN B. WEISNER and )
RONIA WEISNER, )
)
Plaintiffs, )
)
v. ) O R D E R
)
FLIR SYSTEMS, INC. and )
JACK G. BLAKELY )
)
Defendants. )

This cause comes before the Court on defendants' motion to dismiss for lack of personal

jurisdiction or, in the alternative, for *forum non conveniens*. [DE 13]. Plaintiffs filed a motion for

extension of time for their response in opposition. [DE 25]. Plaintiffs' motion for extension of time

[DE 25] is GRANTED. For the reasons that follow, defendants' motion to dismiss [DE 13] is

GRANTED. This action is DISMISSED WITHOUT PREJUDICE for lack of personal

jurisdiction.

BACKGROUND

The following relevant factual allegations are taken primarily from plaintiffs' complaint,

DE 1, and Mr. Weisner's affidavit, DE 23.

Defendant, FLIR Systems, Inc. ("FLIR), is an Oregon corporation headquartered in

Wilsonville, Oregon that specializes in the design and production of thermal imaging cameras and

component parts. DE 1, ¶ 2. Defendant Jack Blakely lives in Saudi Arabia and has been a year-

round resident in that country since August 2012. DE 16, ¶ 4. Mr. Blakely is Regional Director of

Business Development for FLIR's Surveillance Middle East & Africa business group and is also the General Manager of FLIR's Riyadh office. *Id.* ¶ 2.

Plaintiffs John Weisner and Ronia Weisner are residents of Fayetteville, North Carolina, where they have maintained a permanent residence since 2005. DE 1, ¶ 1; DE 23, ¶ 4.

In late 2016, Mr. Weisner saw an advertisement on LinkedIn for a program management position with FLIR in Abu Dhabi, United Arab Emirates. DE 23, ¶ 5. In December 2016, he applied for the position online. *Id.* Mr. Weisner was in Saudi Arabia in July 2017 visiting his wife Ronia— who was working in Jeddah, Saudi Arabia at that time—when he received a call from Mr. Blakely about his application. *Id.* After a couple telephone conversations, Mr. Blakely arranged for Mr. and Ms. Weisner to fly to Riyadh for an interview. *Id.* ¶ 6. During this first meeting, the Weisners explained to Mr. Blakely that were they to move to Riyadh, Ms. Weisner would be giving up an excellent job in Jeddah and would lose her residence permit. *Id.* The Weisners stressed that it was therefore a non-negotiable condition that both he and his wife be able to obtain residence permits and Iqamas (Saudi Arabian work visa and residence permits). *Id.* Mr. Blakely assured them that they would receive the required permits. *Id.*

While Mr. Weisner was in Saudi Arabia visiting his wife, Mr. Blakely contacted him on numerous occasions via telephone, and at some point during this period, Mr. Blakely offered him the position. *Id.* ¶ 7. Mr. Blakely requested the Mr. Weisner begin work immediately. *Id.* Mr. Weisner advised that he did not have the required permits to work, to which Mr. Blakely assured him that he would start the process of getting the permits and again requested that, in the meantime, Mr. Weisner start working. *Id.*

During the contract negotiations, defendants made specific representations to induce Mr. Weisner to enter into the contract. DE 1, ¶ 10. These included promises to cover costs for travel,

for moving Ms. Weisner from Jeddah to Riyadh, for personal travel back to the United States, medical insurance coverage, housing, bonuses, and a vehicle allowance. *Id.* The parties also specifically discussed the benefits needed to move Mr. Weisner from North Carolina and Mr. Blakely knew the Weisners were relying on his representations. *Id.* ¶ 11.

A formal offer letter addressed to Mr. Weisner's North Carolina home is dated August 10, 2017 and a contract was entered into on September 20, 2017. DE 1-1, Ex. A. The contract was made retroactive, stating that Mr. Weisner's employment would start on September 3, 2017. *Id.* According to the contract, FLIR would apply for and obtain a block/visa for the program manager position, which FLIR represented would be used to obtain the necessary work and residence permits. DE 1, ¶ 14.

Mr. Weisner began work on September 3, 2017 under the belief that FLIR was in the process of obtaining the work permits. DE 23, ¶ 9. He returned home to North Carolina in November 2017 to obtain a temporary work visa, meet with the FLIR offices in Oregon, and provide information to the U.S.-Saudi Arabian Business Council. Mr. Blakely and Mr. Weisner talked on the phone repeatedly during this period, and payments were made by FLIR to Mr. Weisner's bank account identified with his North Carolina address. *Id.* ¶¶ 9–12.

Despite repeated representations that the permit process was underway, Mr. Weisner never obtained his work visa/Iqama and, in fact, later learned that Mr. Blakely and NLIR had not been working actively to secure the permits. *Id.* ¶¶ 15, 23–29. Plaintiffs learned that even prior to contract formation, Blakely and FLIR knew they would be unable to obtain the block/work visa, and that the Weisners had relied on their representations. *Id.* ¶ 16. In addition, FLIR refused to pay the substantial relocation costs the Weisners incurred while moving their jobs and residence to Riyadh. *Id.* ¶ 24.

As a result of not receiving the required permits and incurring substantial monetary damages during the relocation process, and for other breaches of the employment contract, Mr. Weisner terminated the contract with FLIR in August 2018. *Id.* ¶ 25. Mr. Weisner demanded return of $55,000 withheld by FLIR for tax purposes without his consent, which was refused. *Id.* ¶ 2.

Plaintiffs filed this action in May 2019 against Mr. Blakely and FLIR alleging breach of contract, fraudulent misrepresentation, unfair and deceptive trade practices, and conversion. DE 1, ¶¶ 27–47. In addition, plaintiffs ask for punitive damages. *Id.* ¶ 51.

Defendants have moved to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of jurisdiction. DE 13. In the alternative, defendants ask the Court to dismiss the case for *forum non conveniens* because, in their view, Saudi Arabia is the proper forum for this dispute.

Plaintiffs respond that the exercise of personal jurisdiction comports with due process. They argue that the Court has specific jurisdiction over both defendants and general jurisdiction over FLIR. They further argue that Saudi Arabia does not have jurisdiction over this matter because Mr. Weisner's employment contract is null and void, rendering its forum selection clause invalid.

## DISCUSSION

A suit may be dismissed under Rule 12(b)(2) if a court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). District courts must view the allegations in the light most favorable to the plaintiff and draw inferences in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

Federal courts may exercise personal jurisdiction over a defendant if (1) "such jurisdiction is authorized by the long-arm statute of the state in which the district court sits" and (2) "application of the long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC*, 773 F.3d at 558. Due process requires that a defendant have "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations omitted). North Carolina's long-arm statute permits courts to exercise jurisdiction to the outer limits allowable under federal due process and so only the second prong of the inquiry, due process, is relevant here. *See Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977).

Personal jurisdiction can be either general or specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779–80 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 1780. The exercise of specific jurisdiction, on the other hand, is only permitted when the suit arises out of the defendant's contacts with the forum. *Id.*

In this case, even construing the allegations in the light most favorable to plaintiffs, due process does not permit the Court to exercise jurisdiction over either defendant.

**General Jurisdiction**

Contrary to plaintiffs' argument, the Court does not have general jurisdiction over FLIR. With little exception, the states in which a corporation is "fairly regarded as at home" are its "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, FLIR is incorporated and keeps its principal place of business in Oregon. Plaintiffs

5

contend that this is the exceptional case where the "frequency and regularity of [FLIR]'s activity in North Carolina" renders them subject to general jurisdiction. DE 22, at 13. To support this argument, plaintiffs point to the fact that FLIR has an office and leases space in North Carolina, employs 25 people in the state, and distributes about $17 million worth of products throughout the state.

To start, the office and employees belong to an FLIR subsidiary, not FLIR. But even assuming all the subsidiary's contacts with North Carolina should be attributed to FLIR, this case would still fall far short of being the exceptional case. FLIR operates across the globe, generating close to $2 billion in revenue annually and employing over 4,000 people. FLIR can hardly be said to be "at home" in North Carolina. Holding as such would render the "at home" inquiry synonymous with "doing business" in the state. *Bauman*, 571 U.S. at 139 n.20 (internal quotations omitted).

**Specific Jurisdiction**

In addition, the Court does not have specific jurisdiction over either defendant. Specific jurisdiction requires courts to focus "on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (internal quotations omitted). The suit must arise from the defendant's contacts with the forum state that were created by the defendant himself. *Id.* at 284. In the business context, a defendant's contacts with the forum state can include offices or agents, property, reaching into the state to initiate business, significant or long-term business activities, choice of law agreements, in-person contact inside the state for purposes of the business relationship, the nature, quality, and extent of the parties' communications, and contract performance in the state. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

6

Plaintiffs point to the following FLIR contacts to try to establish personal jurisdiction: (1) the office in North Carolina that performs R&D for infrared lenses and thermal camera systems; (2) the lease for this same building; (3) advertisement of the program manager position; (4) Blakely's initial contact through Mr. Weisner's North Carolina telephone number; (5) FLIR's sales activities in the state; (6) communications with Mr. Weisner when he was back in North Carolina; and (7) payments made to Mr. Weisner's bank account with a North Carolina address. DE 22 at 18–19. The contacts advanced for Mr. Blakely are essentially the same given that Mr. Blakely was FLIR's primary agent in Saudi Arabia and had most of the relevant communications with Mr. Weisner. *See* DE 24–25. In addition, plaintiffs add that Mr. Blakely was aware Mr. Weisner was a North Carolina resident and required Mr. Weisner to complete tasks in North Carolina, including obtaining medical records, police reports, and diplomas. *Id.* at 24. Materials for the work visa and resident permit were mailed from Mr. Weisner's North Carolina address. *Id.*

Plaintiffs argue this suit arises out of defendants' contacts with North Carolina because defendants "solicited and recruited [Mr. Weisner], a resident of North Carolina, to come to Saudi Arabia and do work for Defendants." *Id.* at 21. Mr. Blakely "solicited' Mr. Weisner to apply for the position. *Id.* at 24. Plaintiffs further assert that defendants "initiated" the relationship with Mr. Weisner, that precontractual requirements were performed in North Carolina, that direct deposits were sent to a bank account with a North Carolina address, and that money was improperly withheld from that same account.

The defendants' contacts with North Carolina do not render them subject to specific personal jurisdiction. First, the office and the sales activities are unrelated to this suit and therefore are not relevant. Nothing about the employment relationship at issue here is connected to those activities or property. *See Bristol-Myers Squibb*, 137 S. Ct. at 1781 (explaining that when there is

7

no connection between defendants' activities and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State[.]").

Second, the other contacts listed by plaintiffs—even when taken together—are insufficient because they are simply incidental to Mr. Weisner being a North Carolina resident; defendants in no way "purposefully availed themselves" of the privilege of doing business in the state through their contract with Mr. Weisner. *Consulting Engineers Corp.*, 561 F.3d at 279. In their brief, plaintiffs seek to frame this case as a situation where defendants intentionally reached into North Carolina in order to lure a resident from his home, dragging him half-way across the globe based on false assurances and misrepresentations. But such a characterization is undercut by their own complaint and affidavits.

FLIR advertised the position to the general public via Linkedin, and a North Carolina resident—Mr. Weisner—responded and happened to be the candidate they were most interested in. He was in Saudi Arabia when defendants first contacted him. The initial interview and negotiations were in Saudi Arabia. Mr. Weisner had applied for a job in Abu Dhabi, but ultimately accepted a position that was to be performed in Saudi Arabia.

His brief trip back to North Carolina does not alter the conclusion that the relationship between the parties was wholly focused on Saudi Arabia. Mr. Weisner needed to return to the United States to obtain information for the required work permits so he could continue working in Saudi Arabia. His home was North Carolina, so naturally, that is where he went. On the facts presented, beyond scheduling him to meet with FLIR's Oregon office, defendants did not direct or control where in the United States Mr. Weisner traveled.

Plaintiffs make much ado about communications between Mr. Blakely and Mr. Weisner, highlighting that Weisner used a phone with a North Carolina number and that some of the

communications occurred while he was back in North Carolina. They also list the payments to the bank account with the North Carolina address. But even when considered together, these communications and transactions are insufficient for specific jurisdiction. Mr. Weisner's North Carolina phone number and the address associated with his bank account have little, if anything, to do with the relationship between the parties. The contract and work relationship were centered around Saudi Arabia. To the extent mere communications with a North Carolina resident and payments to a bank account designated with a North Carolina address could serve as a basis for specific jurisdiction, the facts in this case fall well short of what would be required. Initial discussions between the parties began in July 2017, in Saudi Arabia, and Mr. Weisner terminated the contract by August 2018. This was hardly a "substantial and continuing relationship" where defendants "received fair notice from the contract documents and course of dealing that [they] might be subject to suit" in North Carolina." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 487 (1985); *see also Consulting Engineers Corp.*, 561 F.3d at 281 (holding that, even with a Virginia law selection clause, communications between an out-of-state defendant and a Virginia-based plaintiff were insufficient for specific jurisdiction in Virginia).

In short, defendants hired Mr. Weisner, a North Carolina resident, for a job that was located in and focused on Saudi Arabia. The parties first met in Saudi Arabia, negotiated much of their agreement there, and Mr. Weisner started work shortly thereafter. Early in his tenure, Mr. Weisner had to return home to North Carolina to gather certain information that would be needed for his continued employment with the firm in Saudi Arabia. While on this trip, he maintained communication with his new employer. Like most people, Mr. Weisner's bank account and phone number reflected the state in which he lived, namely, North Carolina. But in their roughly year-long relationship with the Weisners, defendants did not purposefully avail themselves of the

9

privilege of doing business in North Carolina to an extent that due process permits this Court to exercise personal jurisdiction over them.

Given that the Court lacks personal jurisdiction over defendants in this matter, dismissal is appropriate. Because the Court lacks jurisdiction over this matter, it "has no power to adjudicate and dispose of a claim on the merits" and dismissal without prejudice is required. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013); *see also Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005) ("[U]pon a determination that personal jurisdiction is lacking, a court should not dismiss a case on the merits."). As such, defendants' motion to dismiss is granted and plaintiffs' complaint is dismissed without prejudice.

## CONCLUSION

For the above reasons, defendants' motion to dismiss [DE 13] is GRANTED and this action is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction. Plaintiffs' motion for extension of time for their filed response [DE 25] is GRANTED. The Clerk is DIRECTED to close the case.

So ORDERED, this _5_ day of October, 2019.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE